96 P.3d 530

JOHN C. LINCOLN HOSPITAL AND HEALTH CORPORATION, et al., Plaintiffs–Appellants/Cross–Appellees

v.

MARICOPA COUNTY, et al., all political bodies of the State of Arizona, Defendants–Appellees/Cross–Appellants.

No. 1 CA–CV 03–0074.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 3, 2004.

As Amended Sept. 1, 2004.

Gammage & Burnham By Richard B. Burnham, Cameron C. Artigue, Phoenix, and Law Offices of Thomas A. Zlaket By Thomas A. Zlaket, Tucson, Attorneys for Plaintiffs–Appellants.

Meyer, Hendricks & Bivens, P.A. By Don Bivens, Marc Kalish, Phoenix, Attorney for Defendant–Appellee.

## OPINION

HALL, Judge.

¶ 1 The trial court entered judgment in favor of John C. Lincoln Hospital Corporation; Scottsdale Memorial Health Systems, Inc.; Chandler Regional Hospital; St. Luke's Medical Center aka Ornda St. Luke's Medical Center; and Phoenix Children's Hospital (collectively, Hospitals) against Maricopa County (County) in the amount of $1,119,677.16 as reimbursement to the Hospitals for emergency medical treatment rendered to indigent patients pursuant to Arizona Revised Statutes (A.R.S.) section 11–291.01 (1997).[1]

¶ 2 The Hospitals appealed, raising the following issues:

1. Did the trial court err by determining the Hospitals' claims were unliquidated and therefore refusing to award them prejudgment interest?

2. Did the trial court err by determining the Hospitals were not entitled to attorneys' fees because their lawsuit was not a mandamus action pursuant to A.R.S. § 12–2030 (2002)?

¶ 3 The County raises the following issues on cross-appeal:

1. Did the trial court err by applying a "doctor-bill assumption" that non-hospital charges equal a fixed percentage of hospital charges in order to "spend-down" patients' excess income and allow them to qualify as indigents under A.R.S. § 11–297(B) (1997)?

2. Did the trial court err by concluding the Hospitals' administrative claims for reimbursement sufficiently complied with the requirements of A.R.S. § 11–622 (2002)?

3. Did the trial court err by determining the Hospitals provided sufficient evidence of the patients' eligibility to qualify for indigent, emergency coverage under § 11–291.01?

4. Did the trial court err by determining the Hospitals did not receive third-party payments that would offset their claims for reimbursement?

5. Did the trial court err in construing § 11–291.01(A) as precluding the County from reducing its eligibility standards, services or benefit levels from those in effect on January 1, 1981?

6. Did the trial court err by admitting certain expert testimony and various summaries that lacked sufficient foundation?

We affirm the judgment in all respects except that we vacate the trial court's determination that the Hospitals were not entitled to prejudgment interest on their claims, and remand so the trial court may calculate and include such interest in the judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 4 For the past twenty years, private hospitals, including the named appellants, have submitted claims for reimbursement to the County for emergency medical treatment provided to indigent County residents. Although tens of thousands of claims have been

1. Arizona Revised Statutes §§ 11–291.01 and 11–297 (1997) were repealed effective October 1, 2001. *See* 2001 Ariz. Sess. Laws, ch. 344, §§ 9, 12.

filed, most disputes between the County and the private hospitals have been settled without litigation. However, in May 2000, the County abandoned its general policy of seeking settlement resolution of contested claims, and instead adopted a posture of litigating all disputes.

¶ 5 Thousands of submitted claims, the validity of which the County has challenged, have been consolidated into twenty-eight cycles. The 461 claims at issue in this case represent Cycles II and III, claims from patients receiving treatment in the years 1997, 1998, and 1999. After a bench trial, the court rendered a judgment requiring the County to reimburse the Hospitals for $1,119,677.16 in expenses incurred providing emergency medical services to indigents. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 6 We first address the issues the County raises in its cross-appeal attacking the merits of the judgment.

## I. Doctor–Bill Spend–Down Assumption

¶ 7 Pursuant to § 11–297(A), the County provided emergency medical care for indigents without requiring application to the Arizona Health Care Cost Containment System (AHCCCS). Subsection (B)(1)(a) of the statute defined "indigent" as a person who does not have an annual income in excess of $2,500. However, even if a patient had an income exceeding the $2,500 ceiling at the time of hospital admission, the patient could become indigent during hospitalization by incurring hospital and medical charges that, after being deducted from the patient's income, qualified the patient for County medical care.[2] *Walter O. Boswell Mem'l Hosp., Inc. v. Yavapai County,* 148 Ariz. 385, 388–89, 714 P.2d 878, 881–82 (App.1986); *St. Joseph's Hosp. and Med. Ctr. v. Maricopa*

*County,* 130 Ariz. 239, 242–44, 635 P.2d 527, 530–31 (App.1981).

¶ 8 During their course of dealing over the previous two decades, the County and Hospitals stipulated to the "doctor-bill spend-down assumption," an administrative convenience to facilitate the settlement of submitted claims by which non-hospital charges, that is, medical expenses incurred by the patient before hospital admission, were treated as a fixed percentage (25%) of hospital charges. In its findings of fact, the trial court found that the County was equitably estopped from contesting the 25% spend-down figure:

> The evidence preponderates in plaintiffs' favor in the establishment of the principle that the parties agreed to use certain "conventions" in their dealings over the last 20 + years in their efforts to settle similar claims. . . . I find that the parties' history of applying these "conventions" or "protocols," including the application of a 25% "spenddown" figure for non-hospital charges, was a reasonable administrative convenience and both sides agreed to and did in fact use them. Although the witnesses' testimony conflicted on this issue, the plaintiffs' evidence preponderated when credibility is considered. Furthermore, it is reasonable to conclude that the non-hospital charges related to the care in question is equal to 25% of the bill charges of the hospital bills and that the plaintiffs reasonably and detrimentally relied upon that convention.

¶ 9 The County argues that the trial court erred in applying the 25% assumption because: (1) § 11–297(E)(1) only required the County to deduct verified medical expenses, therefore a fixed assumption did not comply with the statutory requirements; (2) the record is devoid of any evidence to establish that any portion of any patient's assumed spend-down was incurred before the patient's emergency hospital treatment as required under § 11–297(E)(1); (3) in several instances the Hospitals or non-hospital providers

---

**2.** Section 11–297(E)(1) provided that the county shall:

Deduct from the calculation of income medical expenses incurred by each [AHCCCS] applicant for which the applicant is responsible for payment and which are not subject to any

applicable third party payments for the twelve months immediately prior to determination of eligibility for classification as an indigent under this section. Medical costs incurred do not include the cost of services provided by a county free of charge, or on a subsidized basis.

had received third-party payments, thereby releasing the patient from any obligation to pay and therefore disqualifying those charges as deductibles under § 11–297(E)(1); (4) the County stipulated to the assumption only to facilitate settlement, not for purposes of litigation, and because the assumption was never utilized outside the settlement context, Arizona Rules of Evidence (Rule) 408 precludes evidence of the assumption to prove liability or the amount of damages; and (5) the Hospitals did not reasonably rely on the assumption to their detriment.

¶ 10 We first address the trial court's finding that the County was equitably estopped from contesting the spend-down figure, which, if correct, is determinative on this issue. In order to establish equitable estoppel, a party must show: (1) affirmative acts inconsistent with a claim afterwards relied upon; (2) action by a party relying on such conduct; and (3) injury to the party resulting from a repudiation of such conduct. *Tucson Elec. Power Co. v. Ariz. Dep't of Revenue,* 174 Ariz. 507, 516, 851 P.2d 132, 141 (App.1992). As a further consideration, the effect on the public of imposing estoppel must be assessed because estoppel will not be applied to the detriment of the public interest. *Valencia Energy Co. v. Ariz. Dep't of Revenue,* 191 Ariz. 565, 576, ¶ 32, 959 P.2d 1256, 1267 (1998). Questions of estoppel, including reasonable reliance, are fact-intensive inquiries. *See Nelson v. Phoenix Resort Corp.,* 181 Ariz. 188, 196, 888 P.2d 1375, 1383 (App.1994); *Cook v. Great W. Bank & Trust,* 141 Ariz. 80, 86, 685 P.2d 145, 151 (App.1984). We defer to the trial court with respect to any factual findings explicitly or implicitly made, affirming them so long as they are not clearly erroneous, even if substantial conflicting evidence exists. *Twin City Fire Ins. Co. v. Burke,* 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003); *Kocher v. Ariz. Dep't of Revenue,* 206 Ariz. 480, 482, ¶ 9, 80 P.3d 287, 289 (App.2003).

¶ 11 The first element of estoppel requires affirmative acts inconsistent with the position later relied on, with an action by the government requiring a considerable degree of formalism. *Valencia,* 191 Ariz. at 577, ¶ 36, 959 P.2d at 1268. In the series of

letters exchanged between the parties, each agreed to employ the 25% doctor-bill spend-down assumption to all future settlements. The letters written by the Maricopa County Attorney's Office carried the requisite formality, and the Hospitals assert the County represented through these letters that the doctor-bill assumption would apply prospectively in all cases. *Compare Open Primary Elections Now v. Bayless,* 193 Ariz. 43, 47, ¶ 14, 969 P.2d 649, 653 (1998) (affirming dismissal of promissory estoppel argument because "[e]ven under the facts as alleged by appellants [the government officials] never reduced the alleged agreement to writing, and no degree of formality characterized the purported agreement"). However, we note the letters did not assure, as the Hospitals contend, that the assumption would be applied to all future claims. The precise language of the letters stipulate to using the assumption in all "future" and "subsequent settlements." Nonetheless, the trial court determined that these statements, made in the context of the parties' course of dealing, which the County concedes at that time was essentially to settle *all* disputes, was an act inconsistent with the County's current position that would require the Hospitals to have collected all non-hospital medical expenses for each patient. Because the trial court's finding is supported within the broad context of the parties' pattern of settling nearly all contested claims, the court did not abuse its discretion.

¶ 12 The second estoppel requirement is that the party claiming estoppel actually relied on the government's act and that such reliance was reasonable under the circumstances. *Id.* at 577, ¶ 37, 959 P.2d at 1268. Thus, the party seeking estoppel must demonstrate both that it prospectively relied on the government action and that it acted in good faith in doing so. *Id.* The County did not notify the Hospitals that it had decided to forego the parties' established settlement procedures and litigate all disputed claims until May 2000. Because the Hospitals had no expectation that the parties' long-standing pattern of settlement would be brought to a halt as to the claims already filed, they reasonably determined that collecting each pa-

tient's bills was unnecessary and framed their administrative policies accordingly.

¶ 13 The third requirement of estoppel is a substantial detriment to the party seeking estoppel resulting from a repudiation of prior representations. *Id.* at 577, ¶ 38, 959 P.2d at 1268. This detriment requires a positional change not compelled by law. *Id.* Thus, no detriment is incurred when the party's only injury is that it must comply with the law. *Id.* The County argues the Hospitals suffered no detriment because the County's change of position simply required them to do what they are statutorily required to do, namely establish the medical expenses incurred by each patient in order to spend-down income. However, by representing that it would allow the Hospitals to use a fixed assumption for spend-down and not require proof of each patient's actual medical charges, the County waived its right to enforce this requirement with regard to all patient claims arising before May 2000, when the County informed the Hospitals it would no longer settle contested claims and instead opt for litigation.[3] Because the Hospitals relied on the parties' continued use of their stipulated settlement protocols, they did not collect patients' non-hospital records as they were admitted for treatment, and therefore would have incurred considerable expense in attempting to reconstruct those records.

¶ 14 Finally, even if each of these requirements is satisfied, estoppel may be applied against the government "only when the public interest will not be unduly damaged and when its application will not substantially and adversely affect the exercise of government powers." *Id.* at 578, ¶ 40, 959 P.2d at 1269. Estopping the County only as to patient claims arising before May 2000 will not threaten the County's solvency or otherwise unduly damage the public interest. The estoppel only applies retroactively to the claims arising before the County's notice to the Hospitals that it would no longer abide by the settlement conventions and would thereafter proceed with litigation for all disputed claims. Because the County is not prevented from prospectively requiring the Hospitals to document all non-hospital bills for spend-down in claims arising after the notice, there is no substantial and adverse effect on the County's powers. *See id.*

¶ 15 Because the trial court correctly found that the County was equitably estopped from contesting the spend-down figure, we need not address the County's specific objections regarding the application of § 11–297(E)(1).

## II. Sufficiency of the Claims Submitted

¶ 16 In its findings, the trial court stated: "Plaintiffs provided emergency hospital and medical services to certain patients. These patients' hospital bills were submitted to the County for payment under the requirements of Arizona law."

¶ 17 Pursuant to § 11–622(A), a person having a claim against the County must present to the board of supervisors "an itemized claim executed by the person under penalties of perjury, stating minutely what the claim is for, specifying each item, the date and amount of each item and stating that the claim and each item of the claim is justly due." To comply with this statute, the Hospitals submitted Universal Billing 1992 (UB–92) forms that include eighty-six informational fields identifying the dates of service and itemizing the charges incurred by each patient. The UB–92 form also contains a certification that anyone falsifying or misrepresenting information on the form may be subject to a fine or imprisonment.

¶ 18 Before trial, the County filed a motion for partial summary judgment challenging the sufficiency of the claims submitted, but the court found that there were material factual issues that precluded sum-

---

**3.** Given our resolution of the equitable estoppel issue, the County's Rule 408 objection is without merit. As the Hospitals contend and the County concedes, evidence of a settlement agreement otherwise precluded by Rule 408 may be offered for a purpose other than to prove or disprove liability or the validity of a claim or its amount, such as to prove the elements of estoppel. *Start-*

*er Corp. v. Converse, Inc.,* 170 F.3d 286, 293 (2nd Cir.1999). In its findings, the trial court explicitly stated it applied the 25% assumption upon determining the Hospitals reasonably and detrimentally relied upon its use. Therefore, the trial court's consideration of this "settlement convention" was not prohibited by Rule 408.

mary judgment.[4] During trial, the County made a motion for judgment as a matter of law on several issues pursuant to Arizona Rule of Civil Procedure (Rule) 50(a)(1), but did not reassert its argument that the UB–92 forms failed to comply with § 11–622(a). The Hospitals contend that the trial court's denial of the County's motion for partial summary judgment cannot be reviewed on appeal. Under the circumstances of this case, we agree.

¶ 19 Generally, the denial of a summary judgment motion is not reviewable on appeal from a final judgment entered after a trial on the merits. *See Navajo Freight Lines, Inc. v. Liberty Mut. Ins. Co.,* 12 Ariz.App. 424, 428, 471 P.2d 309, 313 (1970) (rejecting claim that denial of summary-judgment motion is appealable as an intermediate order pursuant to A.R.S. § 12–2102, commenting "an order denying a motion for summary judgment is strictly a pretrial order that decides only one thing—that the case should go to trial"); *see also Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 397 (5th Cir.1995) ("Once trial begins, summary judgment motions effectively become moot."). Accordingly, in cases that have gone to trial, a party who wants to preserve a summary-judgment issue for appeal, with a possible exception for a purely legal issue,[5] must do so by reasserting it in a Rule 50 motion for judgment as a matter of law or other post-trial motion. *See, e.g., Richards v. City of Topeka,* 173 F.3d 1247, 1252 (10th Cir.1999) ("Summary judgment issues based on factual disputes end at trial, and are not subject to appellate review. The proper method for redress ... is the filing of motions for judgment as a matter of law during and after

trial."). As the court observed in *Navajo Freight Lines,* a contrary rule "could lead to the absurd result that one who has sustained his position after a full trial and a more complete presentation of the evidence might nevertheless be reversed on appeal because he had failed to prove his case more fully at the time of the hearing of the motion for summary judgment." 12 Ariz.App. at 428, 471 P.2d at 313. Because the trial court denied the County's motion for partial summary judgment due to the existence of material factual disputes, the County waived its right to appeal the sufficiency of the claims by not reasserting the issue during or after trial. Therefore, we need not address the Hospitals' alternative argument that the trial court correctly found the Hospitals' submission of UB–92 forms complied with the statutory claim requirements.

¶ 20 The County nonetheless contends it can raise the Hospitals' alleged noncompliance with the requirements of § 11–622 because the trial court lacked subject-matter jurisdiction over the submitted claims, citing *Tucson Medical Center. v. Apache County,* 140 Ariz. 476, 682 P.2d 1143 (App.1984). In that case, a panel of our colleagues from Division Two ruled that the trial court lacked jurisdiction over a claim that was untimely filed because it had been sent to the wrong county. *Id.* at 476–77, 682 P.2d at 1143–44. However, the continuing viability of *Tucson Medical Center* is questionable in light of *Pritchard v. State,* 163 Ariz. 427, 430, 788 P.2d 1178, 1181 (1990), in which our supreme court held that meeting the time element regarding the filing of a notice pursuant to A.R.S. § 12–821 (2002) is not a jurisdictional

---

4. The trial court found: "There are genuine issues of material fact with respect to whether the Universal Billing Form (UB–92) submitted by the hospitals, and utilized throughout the health care industry, satisfied the statutory requirements of itemization, execution, penalty of perjury, and whether the reimbursements were justly due."

5. A purely legal issue or question is one that does not require the determination of any predicate facts, namely, "the facts are not merely undisputed but immaterial." *Seidel v. Times Ins. Co.,* 157 Or.App. 556, 970 P.2d 255, 257 (1998). *See, e.g., Pavon v. Swift Transp. Co.,* 192 F.3d 902, 906 (9th Cir.1999) (claim-preclusion defense); *Lakewood v. Brace,* 919 P.2d 231, 240 (Colo.1996)

(jurisdictional defense of qualified immunity); *Payless Drug Stores Northwest v. Brown,* 300 Or. 243, 708 P.2d 1143, 1144–45 (1985) (facial constitutionality of a statute). The factual-legal distinction has been rejected in some jurisdictions. *See, e.g., Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1250 (Colo.1996) (holding a summary-judgment denial unappealable "regardless [] whether the denial is premised on a point of law or material issues of fact in controversy" because "the fact/law dichotomy is unworkable, unreliable, and unnecessary"). In any event, the trial court denied the County's motion based on the existence of genuine issues of material fact.

prerequisite, but rather a procedural requirement analogous to a statute of limitations. Even assuming it survives *Pritchard*, *Tucson Medical Center* is distinguishable because the claims in this case were timely filed.

¶ 21 Clearly, the County's assertion that the trial court—and this court—lack subject-matter jurisdiction has no merit. Therefore, because the County raised only issues of fact in its summary judgment motion, its failure to renew the sufficiency argument in a Rule 50 or post-trial motion waives the issue on appeal.

### III. Sufficiency of Eligibility Evidence and Evidence of Third–Party Offsets

¶ 22 The County claims that the trial court incorrectly found that the Hospitals sufficiently proved each patient's indigent status and residency as statutorily required for reimbursement. Additionally, the County argues that the trial court inappropriately included medical expenses already satisfied by third parties in calculating the amount of the reimbursement award. Both these claims elicit the same analysis.

¶ 23 We defer to the trial court with respect to any factual findings and assume that the trial court found every fact necessary to sustain the judgment. *Kocher,* 206 Ariz. at 482, ¶ 9, 80 P.3d at 289; *Horton v. Mitchell,* 200 Ariz. 523, 526, ¶ 13, 29 P.3d 870, 873 (App.2001). This requires a litigant to object to inadequate findings at the trial court level so that the court will have an opportunity to correct them, and failure to do so constitutes a waiver. *Elliott v. Elliott,* 165 Ariz. 128, 134, 796 P.2d 930, 936 (App.1990). Moreover, "[i]mplied in every judgment, in addition to express findings made by the court, is any additional finding that is necessary to sustain the judgment, if reasonably supported by the evidence, and not in conflict with the express findings." *Coronado Co. v. Jacome's Dep't Store, Inc.,* 129 Ariz. 137, 139, 629 P.2d 553, 555 (App.1981).

¶ 24 The trial court found "[t]he plaintiffs have proved by a preponderance of evidence many of their claims, in whole or in part. The defendant on various bases rebutted some claims, in whole or in part, by a preponderance of its evidence." Although the Hospitals' total claim for the treatment of the 461 patients was $1,421,777.58, the judgment requires the County to reimburse the Hospitals for only $1,119,677.16, a difference of over $300,000. One possible explanation for this discrepancy is that the trial court found some patients to be ineligible for coverage and that it also determined the Hospitals had received third-party payments offsetting some claims. *Elliott,* 165 Ariz. at 135, 796 P.2d at 937 (explaining the trial court is presumed to have made any necessary findings so long as the additional findings are reasonably supported by the evidence and are not in conflict with any of the trial court's express findings). The Hospitals contend the difference more than compensates for all claims of insufficient proof of patient eligibility and third-party payment that were set forth by the County, an assertion the County does not refute. Because the record contains substantial evidence in support of the Hospitals' award and the County cannot demonstrate any prejudice, the County's arguments fail. *See Ariz. Water Co. v. Ariz. Dep't of Water Res.,* 208 Ariz. 147, 152, ¶ 18 n. 10, 91 P.3d 990, 995, ¶ 18 n. 10 (2004) (stating appellate courts "will consider any legal theory within the issues and supported by the evidence which tends to support and sustain the judgment of the trial court") (quoting *Cross v. Cross,* 94 Ariz. 28, 31, 381 P.2d 573, 575 (1963)); *Coronado Co. Inc.,* 129 Ariz. at 139, 629 P.2d at 555 (same).

### IV. A.R.S. § 11–291.01 Mandates that the County Not Reduce Its Eligibility Standards Below Those in Effect on January 1, 1981

¶ 25 Relying on § 11–291.01(A),[6] the trial court made the following conclusion of law:

6. During the relevant time frame, § 11–291.01(A) provided:

Notwithstanding any other provision of law and except as provided in this section, a county shall not reduce the eligibility standards, benefit levels and categories of service for hos- pitalization and medical care of the indigent sick in effect in the county on January 1, 1981, or required by law to have been in effect on that date, except that persons who are determined eligible for services provided through the Arizona health care cost containment sys-

"In defining its reimbursement obligation to plaintiffs, the County could not reduce its eligibility standards, services or benefit levels below the standards in effect on January 1, 1981."

■ ¶ 26 The County argues that the trial court's conclusion and subsequent reliance on the 1981 standards was erroneous for two reasons. First, the County claims that its determination of the eligibility of *all* patients for County health benefits was controlled by the following provisions of former § 11–297:

> (E) Each person desiring to be classified as an indigent pursuant to subsection B of this section shall apply for certification by the county of residence of the applicant pursuant to rules adopted by the director of the Arizona health care cost containment system administration.... This subsection does not limit a county's responsibility for the provision of services for indigent persons otherwise required by this chapter.

and

> (B) Annual income shall be calculated by multiplying by four the applicant's income for the three months immediately prior to the application for eligibility for the Arizona health care cost containment system pursuant to title 36, chapter 29, article 1.

According to the County, these statutes required that counties follow the rules adopted by the AHCCCS director when determining indigency pursuant to Title 11.[7] We disagree.

■ ¶ 27 Our primary goal in construing a statute is to determine and give effect to the intent of the legislature. *Luchanski v. Congrove,* 193 Ariz. 176, 178, ¶ 9, 971 P.2d 636, 638 (App.1998). Generally, when the language of the statute is clear, we follow its direction without resorting to other methods of statutory interpretation. *Bilke v. State,* 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003). However, statutes relating to the same subject or having the same general purpose, namely, statutes that are in *pari materia,* "should be read in connection with, or should be construed with other related statutes, as though they constituted one law." *State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). Additionally, we have a duty to interpret statutes in a manner that does not render the statute meaningless or of no effect. *See St. Joseph's Hosp. and Med. Ctr.,* 130 Ariz. at 248, 635 P.2d at 536.

¶ 28 As pointed out by the Hospitals, the reference in subsection E to "person[s] desiring to be classified as an indigent pursuant to subsection B" referred to someone seeking an advance eligibility determination in non-emergency situations. *See* § 11–297(A) ("Except in emergency cases when immediate hospitalization or medical care is necessary [ ] no person shall be provided relief under this article without first filing [ ] a statement in writing [ ] that he is an indigent as defined by subsection B of this section."). The County's argument that the first sentence of subsection E was intended as a substantive limitation on the eligibility standards set forth in § 11–291.01 is further undercut by the statement later on in subsection E that "[t]his subsection does not limit a county's responsibility for the provision of services for indigent persons otherwise required by this chapter." Finally, any doubt regarding the legislature's intent that the freeze in coverage in § 11–291.01 not be

tem pursuant to title 36, chapter 29 and for whom the county has notified the Arizona health care cost containment system administration are not eligible for the services provided pursuant to title 36, chapter 29 from any county. A county may reduce or deny the eligibility standards, benefit levels and categories of service after May 1, 1997, except for emergency services provided to persons who are in fact eligible pursuant to section 36–2905.05 or to any person who is not either a citizen of the United States or who does not meet the alienage requirements that are established pursuant to section 11–297, except that a county shall not deny or reduce eligibility standards, benefit levels and categories of service to persons who are receiving services pursuant to the county's obligation under this section on May 1, 1997 or to persons receiving long-term care services pursuant to title 36, chapter 29, article 2 on August 21, 1996.

7. According to the parties, some counties had income-eligibility standards that were more generous than those to be applied under AHCCCS, and other counties (including Maricopa) covered services, for example, psychiatric and long-term care, that would be excluded under AHCCCS.

overridden by the application procedures in § 11–297 is removed by the introductory phrase in § 11–291.01(A) ("Notwithstanding any other provision of law and except as provided in this section").

¶ 29 As its second argument, the County asserts that the second sentence of § 11–291.01(A) expressly allowed the County to reduce eligibility standards below those in existence on January 1, 1981. Although it is true that a literal reading of that sentence would permit a county, after May 1, 1997, to reduce the eligibility standards and benefit levels that existed on January 1, 1981 for all persons *except* non-qualified aliens, there are several apparent problems with such a reading.

¶ 30 First, if read literally, the second sentence, which permitted a county to reduce eligibility standards and benefit levels except for non-qualified aliens, renders the first sentence, which prohibited a county from reducing eligibility standards and benefit levels except for non-qualified aliens, essentially meaningless. Second, the comparable portion of § 11–291.01(B) (the predecessor of which was added when La Paz County was carved out of Yuma County in 1983),[8] which was intended to mirror § 11–291.01(A) in every material respect, expressly allowed La Paz County to reduce the eligibility standards and benefit levels for non-qualified aliens. Because the legislature could not possibly have intended to permit only La Paz County to reduce benefits for non-qualified aliens, we reject the County's literal reading of subsection A. *See Ariz. Dep't of Revenue v. Gen. Motors Acceptance Corp.*, 188 Ariz. 441, 444, 937 P.2d 363, 366 (1996) (stating Arizona

courts will interpret a statute contrary to its plain meaning "only if necessary to effectuate the legislature's clearly expressed contrary intent or to avoid an absurd result that the legislature could not in any event have intended"); *State v. Thomason*, 162 Ariz. 363, 366, 783 P.2d 809, 812 (App.1989) (noting statutes should be construed in conjunction with other statutes that relate to the same subject or purpose, giving effect to all statutes involved).

■ ¶ 31 Instead, we believe it far more likely that the apparent inconsistency between subsections A and B is in the nature of a clerical error that occurred by the addition of the word "or" to the second sentence of subsection A when § 11–291.01 was divided into subsections A and B in 1993. *See 1993 Ariz. Sess. Laws, ch. 229, § 1.* The word "or" was added as part of non-substantive grammatical changes but had the unintended effect of changing the meaning of the sentence so that it seemingly prevented counties from doing what the statute had been amended to allow only a short time previously, that is, reduce standards and benefit levels for elective medical care for non-qualified aliens. *See Ariz. Sess. Laws 1993, 2nd Spec. Sess., ch. 6, § 4–5.* If we treat this "or" as a clerical error that should be disregarded, subsection A is harmonized with subsection B:

A county may reduce or deny the eligibility standards, benefit levels and categories of service after May 1, 1997, except for emergency services provided to persons who are in fact eligible pursuant to section 36–2905.05,~~or~~ to any person who is not either a citizen of the United States or who

8. Subsection B of § 11–291.01(B) provided:
   Notwithstanding any other provision of law, La Paz county shall not reduce the eligibility standards, benefit levels and categories of service for hospitalization and medical care of the indigent sick in effect in Yuma county on January 1, 1981, or required by law to have been in effect on that date, except that persons who are determined eligible for services provided through the Arizona health care cost containment system pursuant to title 36, chapter 29 and for whom La Paz county has notified the Arizona health care cost containment system administration are not eligible for the services provided pursuant to title 36, chapter 29 from La Paz county. Except for emergency services provided to persons who are eligible under section 36–2905.05, after May 1, 1997 La Paz county may reduce or deny the eligibility standards, benefit levels and categories of service to any person who is not either a citizen of the United States or who does not meet the alienage requirements established under section 11–297, except that a county shall not deny or reduce eligibility standards, benefit levels and categories of service to persons who are receiving services pursuant to the county's obligation under this section on May 1, 1997 or to persons receiving long-term care services pursuant to title 36, chapter 29, article 2 on August 26, 1996.

does not meet the alienage requirements that are established pursuant to section 11–297, except that a county shall not deny or reduce eligibility standards, benefit levels and categories of service to persons who are receiving services pursuant to the county's obligation under this section on May 1, 1997 or to persons receiving long-term care services pursuant to title 36, chapter 29, article 2 on August 21, 1996. *See UNUM Life Ins. Co. of Am. v. Craig,* 200 Ariz. 327, 329, ¶ 11, 26 P.3d 510, 512 (2001) ("When two statutes appear to conflict, we will attempt to harmonize their language to give effect to each.") (citation omitted); *see also State ex rel. Bean v. Hardy,* 110 Ariz. 351, 353, 519 P.2d 50, 52 (1974) (explaining a "change in language is presumed to be a change in form only unless it is clearly shown that the Legislature intended to change the meaning of the law"); *State v. Govorko,* 23 Ariz.App. 380, 384, 533 P.2d 688, 692 (1975) (applying the *Hardy* rule to punctuation changes in statutes). Moreover, even if we accept the County's argument, no evidence was presented that it ever sought to reduce the eligibility standards below what they were on January 1, 1981.[9]

## V. Adequacy of Foundation for Summaries and Expert Testimony

▮▮▮▮▮ ¶ 32 The County contends the trial court improperly admitted two of the Hospitals' summary exhibits: (1) exhibit one, which outlines each patient's date(s) of hospitalization, claim status, and AHCCCS eligibility, as well as the assumptions used to calculate each patient's charges, spend-down, and the County's residual liability, and (2) exhibit forty, which summarizes the Hospitals' damages as set forth in detail in exhibit

one. The County asserts that the summaries do not accurately represent the documents at issue. Additionally, the County claims the testimony of Hospitals' expert Julie Ferrell, explaining the preparation and interpretation of the summaries, should have been excluded on the basis that the evidence lacked sufficient foundation because she was not competent to testify.

▮▮▮ ¶ 33 We review evidentiary rulings for an abuse of discretion and generally affirm a trial court's admission or exclusion of evidence absent a clear abuse or legal error and resulting prejudice. *Yauch v. S. Pac. Transp. Co.,* 198 Ariz. 394, 399, ¶ 10, 10 P.3d 1181, 1186 (App.2000).

¶ 34 The admission of summaries is governed by Rule 1006 of the Arizona Rules of Evidence, which provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

¶ 35 In its findings, the trial court stated: "I adopt the findings of plaintiffs' experts, Susan Eggman and Julie Ferrell, with respect to the charges, which they substantiated, with exceptions as were rebutted by the defendant through contradictory credible testimony." Additionally, the court found: "Of necessity because of the volume of exhibits, numerous summaries were admitted in evidence. It was necessary for me to determine, factually and inferentially, whether the foundation requirements for these summaries

9. The County also claims that the trial court erred by finding that trial exhibit eighteen "contains the eligibility standards, benefits and service levels in effect on January 1, 1981 or shortly thereafter and determines the standards for the Cycle 2 and 3 cases." Trial exhibit eighteen was an old Maricopa County Eligibility Manual that was produced by the County in response to a discovery request. It was received in evidence without objection. Even though the pertinent pages of the exhibit regarding income and eligibility standards were individually dated 1979 and 1980, the County claims that the trial court's reliance on the manual was unjustified because

other pages were dated from 1982. However, the County offers no evidence of the existence of any other manual close in time to 1981. Therefore, we summarily reject this argument as meritless. The County also asserts that indigents seeking medical services would be denied equal protection under the Arizona Constitution if benefit levels varied from county to county. Because it is not a "citizen" under Article 2, Section 13 of the Arizona Constitution, however, the County may not assert such a claim. *Braden Trust v. County of Yuma,* 205 Ariz. 272, 277–78, ¶ 27, 69 P.3d 510, 515–16 (App.2003).

were met. In some cases they were and in some, they were not."

¶ 36 In addition to its summaries, exhibit one contains the 100,000 supporting documents that provide the basis for its summary statements. Of these 100,000 documents, the County concedes that the "overwhelming" majority were extracted from the County and Hospitals' files, which the parties stipulated would be admissible. The County fails to identify any documents that did not originate from the County and Hospitals' files, and the Hospitals contend only four documents fell outside the scope of the parties' stipulation. Moreover, the record reflects that Ferrell is a licensed CPA, that she has worked as an auditor for more than nine years, and that she labored in excess of seven-hundred hours preparing and assembling exhibit one.

¶ 37 Because there is reasonable evidence to support the trial court's finding that Ferrell was credible and competent to testify, and that the Hospitals' summaries satisfied the foundation requirements, we cannot conclude the trial court abused its discretion. *State v. Gallagher,* 169 Ariz. 202, 203, 818 P.2d 187, 188 (App.1991) (noting the credibility of a witness is for the trier of fact to determine, not for an appellate court).

¶ 38 We now address the Hospitals' issues raised on appeal.

## VI. Prejudgment Interest

¶ 39 Entitlement to an award of prejudgment interest is a matter of law reviewed de novo. *Alta Vista Plaza, Ltd. v. Insulation Specialists Co., Inc.,* 186 Ariz. 81, 82, 919 P.2d 176, 177 (App.1995). Prejudgment interest is awarded as a matter of right on a liquidated claim. *Id.* A claim is liquidated if the plaintiff provides a basis for precisely calculating the amounts owed. *Id.; Gemstar, Ltd. v. Ernst & Young,* 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996); *In re Estate of Miles,* 172 Ariz. 442, 445, 837 P.2d 1177, 1180 (App.1992) (holding county was entitled to prejudgment interest on claim to recover the cost of medical care from the date that the amount of the claim was capable of exact calculation).

A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and *claims for goods or services to be paid for at an agreed rate.*

Charles T. McCormick, *Handbook on the Law of Damages* § 54, at 213 (1935) (emphasis added); *Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co.,* 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (1971) (adopting McCormick's definition as the appropriate standard).

¶ 40 By contrast, an unliquidated claim is one

where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed.

McCormick, *Damages* § 54, at 216. As this passage makes clear, the exercise of "opinion or discretion" that renders a claim unliquidated refers to the manner in which damages are calculated. *See also Hansen v. Rothaus,* 107 Wash.2d 468, 730 P.2d 662, 667 (1986) ("Whether amounts claimed ... are liquidated depends upon how these amounts are determined."). Hence, a claim is not deemed unliquidated simply because liability is uncertain. *See Alta Vista Plaza, Ltd.,* 186 Ariz. at 83, 919 P.2d at 178; *Arizona Title Ins. & Trust Co.,* 14 Ariz.App. at 496, 484 P.2d at 649 (holding a good-faith dispute does not preclude recovery of prejudgment interest). All that is necessary is that the evidence furnish data which, if believed, makes it possible to compute the amount with exactness. *Alta Vista Plaza, Ltd.,* 186 Ariz. at 83, 919 P.2d at 178; *Gemstar Ltd.,* 185 Ariz. at 508, 917 P.2d at 237.

¶ 41 In its findings of fact, the trial court ruled that the Hospitals' claims "are unliquidated [ ] because [the County's] *liability* for them is not easily calculable using basic arithmetic. It clearly was necessary to rely upon opinion or discretion to arrive at specif-

ic amounts in every instance." (Emphasis added).

¶ 42 The Hospitals argue that the trial court erred by denying prejudgment interest, contending the submitted claims were liquidated and prejudgment interest should have been awarded as a matter of right. Noting that each hospital must file an expense rate schedule with the Arizona Department of Health Services pursuant to A.R.S. § 36–436 (Supp.1995) and abide by those terms, the Hospitals explain and the County does not dispute that each hospital was assigned an "adjusted billing charge" discount factor as established by A.R.S. § 36–2903.01 (2003) which, when multiplied by the applicable filed rate charges, produces a precise reimbursement amount that the hospital is due for each submitted claim. The Hospitals acknowledge that application of the spend-down assumption was an issue disputed before the trial court, but correctly note that if the trial court determined application of the assumption was warranted, as it did, the claims were subject to precise calculation.[10] Indeed, notwithstanding its conclusion that the Hospitals' claims were unliquidated, the trial court calculated its award of damages down to the last penny.

¶ 43 The County nonetheless claims that the charges for services rendered were not precisely calculable, arguing that the trial court was required to exercise discretion and judgment in determining each patient's financial eligibility under § 11–297. However, regardless of whether they were precisely computable, the necessary determinations the County cites, including each patient's annual income, net worth, and spend-down, impact damages only in the sense that the County is not *liable* for services rendered to non-qualifying patients.

¶ 44 The amount of the claims in this case were capable of exact calculation. The Hospitals provided a specific method of calculation and the requisite data to enable the County to ascertain the exact amount owed. Because an award of prejudgment interest is a matter of right and not a matter of discretion with regard to liquidated claims, the trial court erred by not awarding prejudgment interest.

## VII. Attorneys' Fees

¶ 45 Pursuant to § 12–2030(A), a court shall award fees and other expenses to a party that prevails

> by an adjudication on the merits in a civil action brought by the party against the state, any political subdivision of this state or an intervenor to compel a state officer or any officer of any political subdivision of this state to perform an act imposed by law as a duty on the officer.

A determination whether the attorneys' fee statute for mandamus actions applies is a conclusion of law reviewed de novo. *Motel 6 Operating Ltd. P'ship v. City of Flagstaff*, 195 Ariz. 569, 572, ¶ 15, 991 P.2d 272, 275 (App.1999). Section 12–2030 pertains to actions in mandamus, those seeking to compel an officer of the state or a political subdivision to perform some mandatory duty. *Home Builders Ass'n of Cent. Ariz. v. City of Apache Junction*, 198 Ariz. 493, 503, ¶ 31, 11 P.3d 1032, 1042 (App.2000).

¶ 46 In its conclusions of law, the trial court stated: "[N]o attorneys fees can be awarded, as this case was not filed as a mandamus action but rather as a statutory claim pursuant to A.R.S. § 11–622." Focusing on the language of § 12–2030, the Hospitals maintain the trial court erred by declin-

---

10. In further support of their argument, the Hospitals also cite A.R.S. § 11–297.03 (repealed by 2001 Ariz. Sess. Laws, ch. 344, § 12) which, although not in effect at the time the charges litigated in these claims were incurred, nonetheless suggests that the Hospitals are entitled to prejudgment interest because the legislature enacted the statute to halt accruing prejudgment interest during the claims resolution process and would otherwise have been unnecessary. 1999 Ariz. Sess. Laws, ch. 309, § 5 ("During the claims resolution process, a claim is not subject to a payment penalty [] and interest shall not accrue....").

The Hospitals also claim that because the trial court awarded prejudgment interest with respect to a partial judgment of two patient claims, the County is now collaterally estopped from arguing that the claims are unliquidated because it failed to appeal that judgment. Based on our determination that the Hospitals were entitled to prejudgment interest on *all* claims, we need not consider this argument.

ing to award them attorneys' fees, asserting they satisfied each of the requisite statutory elements by: (1) prevailing on the merits; (2) in a civil action; (3) filed against a political subdivision of the state; and (4) in an action to compel a political officer to perform a duty imposed by law. In response, the County contends that the § 12–2030 attorneys' fee provision is inapplicable because the Hospitals did not file this lawsuit as a mandamus action.

¶ 47 The issue here is whether the refusal of the County to pay a demand is equivalent to a refusal "to perform a duty imposed by law." If so, we believe that Hospitals would be entitled to attorneys' fees pursuant to § 12–2030 even though the action was not instituted as a mandamus action. Clearly, however, the process by which a person presents a demand and a county's consideration of it anticipates that certain claims may be approved and others disallowed. *See* A.R.S. §§ 11–622, –625, –628, –629 (2001). The only duty imposed by these statutes is that a county pay proper county charges in an amount that is "just." §§ 11–628, –629. There is no duty imposed by law that requires the County to treat the payment of demands as if they were ministerial duties. Instead, the County is permitted, indeed required, to investigate a demand before allowing it.

¶ 48 It is only after a rejected demand, or any portion thereof, is reduced to a judgment that the law imposes a duty to pay it. *See* A.R.S. § 11–630 (2001). Because the County's debt had not yet been reduced to a judgment, mandamus was not a proper remedy. *Cf. Larkin v. State ex rel. Rottas,* 175 Ariz. 417, 426, 857 P.2d 1271, 1280 (App.1992) (holding taxpayers' action to compel payment of tax refund previously ordered by the Tax Court was proper mandamus action). Therefore, the trial court appropriately denied an award of attorneys' fees under § 12–2030.

¶ 49 For the reasons discussed, we also deny the Hospitals' request for attorneys' fees on appeal pursuant to § 12–2030.

## CONCLUSION

¶ 50 We affirm the judgment except for the denial of prejudgment interest. We va-

cate that aspect of the judgment and remand so the trial court may calculate and include such interest in the award.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and WILLIAM F. GARBARINO, Judge.