212 P.3d 51

**STATE of Arizona, Appellee,**

v.

**Leon McCarthur PERALTA, Appellant.**

**No. 1 CA–CR 07–0970.**

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 19, 2009.

---

**360**

Terry Goddard, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, and Karla Hotis Delord, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Bruce F. Peterson, Legal Advocate, By Thomas J. Dennis, Deputy Legal Advocate, Phoenix, Attorneys for Appellant.

## OPINION

OROZCO, Judge.

¶ 1 Leon McCarthur Peralta (Defendant) was convicted of and sentenced for one count

of possession or use of dangerous drugs (Count 1) and one count of possession of drug paraphernalia (Count 2). In an earlier appeal, Defendant challenged the trial court's summary denial of his requests for new counsel. *See State v. Peralta,* 1 CA–CR 05–1125, 1 CA–CR 05–1126 (consolidated) (Ariz.App. Feb. 6, 2007) (mem.decision) *(Peralta I).* Pursuant to *State v. Torres,* 208 Ariz. 340, 93 P.3d 1056 (2004), we remanded the matter to the trial court for an evidentiary hearing to determine whether Defendant and his trial counsel, Jaime Hindmarch (Hindmarch), "had a completely fractured relationship, meaning a complete breakdown in communication or an irreconcilable conflict." *Id.* at ¶ 18. If so, we instructed the trial court to vacate the convictions and order a new trial. *Id.*

¶ 2 On August 10, 2007, the trial court held a hearing at which Defendant and Hindmarch testified. The trial court found that Defendant and Hindmarch had communicated with each other on several occasions, but in response to some attempts by Hindmarch to communicate with Defendant, Defendant "refused to communicate because he did not like what Ms. Hindmarch had to say. Defendant's frustration with counsel comes out of a desire to determine trial strategy and the inability to obtain a plea to his satisfaction." The court further found Defendant was effectively represented by Hindmarch, based on steps she took in preparing for trial and her attempts to explain to Defendant the ramifications of going to trial instead of accepting a plea offer. The court therefore concluded that "the differences [between Defendant and Hindmarch] did not amount to an irreconcilable conflict or a completely fractured relationship...." This timely appeal followed, and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S) sections 12–120.21.A.1 (2003), 13–4031 (2001), and 13–4033 (Supp.2008).

## DISCUSSION

¶ 3 The sole issue on appeal is whether the trial court abused its discretion in denying Defendant's motion to dismiss counsel. *See State v. Moody,* 192 Ariz. 505, 507,

¶ 11, 968 P.2d 578, 580 (1998). An abuse of discretion occurs when the trial court's decision is legally incorrect and/or unsupported by the record. *State v. Chapple,* 135 Ariz. 281, 297, 660 P.2d 1208, 1224 (1983). We find no abuse of discretion.

 ¶ 4 "A criminal defendant has a Sixth Amendment right to representation by competent counsel." *Moody,* 192 Ariz. at 507, ¶ 11, 968 P.2d at 580. However, a defendant is not entitled to a counsel of choice or even to a meaningful relationship with his or her counsel. *Id.*

 ¶ 5 A trial judge addressing a defendant's request to change counsel should consider the following factors:

> whether an irreconcilable conflict exists between counsel and the accused; whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and the quality of counsel.

*Id.* (quoting *State v. LaGrand,* 152 Ariz. 483, 486–87, 733 P.2d 1066, 1069–70 (1987)). The burden is on the defendant to prove a genuine irreconcilable difference with trial counsel or that there was a total breakdown in communication. *Torres,* 208 Ariz. at 343, ¶ 8, 93 P.3d at 1059. The evidence must show more than mere animosity causing loss of trust or confidence. *See State v. Paris–Sheldon,* 214 Ariz. 500, 505, ¶ 14, 154 P.3d 1046, 1051 (App.2007) (loss of trust or confidence not sufficient to appoint new counsel). A defendant must establish that he had such a "severe and pervasive conflict with his attorney or ... that he had such minimal contact with the attorney that meaningful communication was not possible." *Id.* at ¶ 12, 154 P.3d at 1051.

¶ 6 Defendant first contends the trial court abused its discretion in not evaluating all of the *Moody* factors. We disagree.

¶ 7 The factual allegations Defendant made in support of his motion, and that we determined required an inquiry on the record to determine the status of Defendant's and Hindmarch's relationship, included statements attributed to Hindmarch that "[s]he didn't have to frick[i]n do anything" and "she doesn't give a s——." *Peralta I* at ¶ 13. Defendant also alleged Hindmarch "had not passed along the State's disclosure [and] refused his request to have an 'independent toxicologist' examine the evidence." *Id.* On the other hand, Defendant, for his part, refused on at least two occasions to talk with counsel, including refusing to communicate with her about whether he would testify in his own defense. *Id.* at ¶ 16.

¶ 8 Our instructions on remand were for the trial court to conduct "an evidentiary hearing on the allegations of total breakdown of communication and/or irreconcilable conflict." *Id.* at ¶ 17. We further instructed that "[t]he trial court must vacate the convictions and order a new trial with new counsel only if Defendant meets his burden of establishing that he and his counsel had a completely fractured relationship, meaning a complete breakdown in communication or an irreconcilable conflict." *Id.* "[T]he trial court's inquiry on remand is limited to whether [Defendant] can establish that he had a completely fractured relationship with his appointed counsel either because of an irreconcilable conflict or because of a total breakdown in communications." *Torres,* 208 Ariz. at 345, ¶ 18, 93 P.3d at 1061.

¶ 9 In his brief[1] to the trial court on remand, Defendant focused solely on his allegation that there was animosity and a lack of communication between himself and his attorney. Defendant addressed none of the other *Moody* factors and proposed no findings of fact or conclusions of law regarding other *Moody* factors to the trial court. We assume the trial court made all necessary *Moody*-related findings required to support

---

1. The trial court ordered the parties to file prehearing briefs. The State filed its prehearing brief on August 8, 2007. Defendant did not file a brief before the hearing. At the conclusion of the hearing on August 10, 2007, the trial court ordered the parties to file simultaneous Findings of Fact and Conclusions of Law by August 17, 2007. Defendant filed a "Reply Brief from Evidentiary Hearing" on August 16, 2007, but did not submit proposed findings of fact or conclusions of law.

its ruling, especially in light of its finding "no colorable issue of law or fact that would entitle the defendant to relief." We will affirm if any reasonable construction of evidence justifies the decision. *John C. Lincoln Hosp. and Health Corp. v. Maricopa County,* 208 Ariz. 532, 540, ¶ 23, 96 P.3d 530, 538 (App.2004); *In re Estate of Shumway,* 197 Ariz. 57, 61, ¶ 9, 3 P.3d 977, 981 (App.1999), *vacated in part on other grounds,* 198 Ariz. 323, 9 P.3d 1062 (2000). Accordingly, under these circumstances, we are unable to conclude the trial court abused its discretion in failing to make specific findings regarding all of the *Moody* factors.

¶ 10 Defendant next argues the trial court erred in addressing whether Hindmarch effectively represented Defendant. Defendant's reliance on *Torres* in support for this argument is misplaced.

¶ 11 Claims of ineffective assistance of counsel are reviewable only in proceedings for post-conviction relief. *State ex rel. Thomas v. Rayes,* 214 Ariz. 411, 415, ¶ 20, 153 P.3d 1040, 1044 (2007) ("We therefore hold ... that a defendant may bring ineffective assistance of counsel claims *only* in a Rule 32 post-conviction proceeding-not before trial, at trial, or on direct review."); *State v. Spreitz,* 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002) ("[I]neffective assistance of counsel claims are to be brought in Rule 32 proceedings. Any such claims improvidently raised in a direct appeal, henceforth, will not be addressed by appellate courts regardless of merit.") Thus, quality of counsel is ordinarily not addressed when inquiring into the factual basis of a defendant's motion to substitute counsel. *Torres,* 208 Ariz. at 344, ¶ 15, 93 P.3d at 1060.

¶ 12 However, *Torres* does not preclude the trial court from considering facts related to effective assistance of counsel in determining whether the relationship was completely fractured. *See also State v. Cromwell,* 211 Ariz. 181, 186, ¶ 26, 119 P.3d 448, 453 (2005) (affirming trial court's denial of motion for change of counsel where trial court noted,

among other things, "that the quality of counsel currently representing [Defendant] is excellent.") On this record, the trial court did not abuse its discretion in finding Hindmarch effectively represented Defendant.[2]

¶ 13 Defendant also claims the trial court failed to follow our instructions on remand to focus its attention on certain attorney-client meetings that occurred shortly prior to trial. He asserts, "[i]nstead, the court's findings made generalized statements concerning the entire course of the relationship between Defendant and Ms. Hindmarch."

¶ 14 Defendant misconstrues our instructions in *Peralta I.* We did not instruct the trial court to limit its inquiry to events that transpired during or after the attorney-client meetings. *Peralta I* at ¶¶ 15–16. Rather, we directed the trial court to conduct a "hearing on the allegations of total breakdown of communication and/or irreconcilable conflict ... consider[ing] the motion 'in light of the facts and circumstances both when the motion was originally made and also after it was denied.'" *Id.* at ¶ 17 (quoting *Torres,* 208 Ariz. at 345, ¶ 16, 93 P.3d at 1061). Therefore, the trial court's findings regarding the "entire course" of Defendant's relationship with Hindmarch do not constitute an abuse of discretion.[3]

¶ 15 Next, Defendant contends the trial court's findings improperly focused on his own "fault for the fracture" he alleged occurred in his relationship with Hindmarch. To the extent Defendant contends that a criminal defendant bears no obligation to act in good faith toward his appointed counsel, we reject his argument. When, as here, a defendant behaves unreasonably with respect to his appointed counsel, he cannot then complain that the result is a fractured relationship that entitles him to a new lawyer. Indeed, the record in this case demonstrates Defendant's relationship with Hindmarch was not irreconcilable; rather, Defendant could have reconciled the relationship had he participated in good faith in his defense and not made unreasonable demands upon Hind-

---

2. Defendant does not claim that the trial court's findings regarding Hindmarch's effective representation are unsupported by the record.

3. Again, Defendant does not contend any finding regarding the "entire course" of the attorney-client relationship is unsupported by the record.

march regarding trial strategy and the plea offer.

¶ 16 At the hearing on remand, Defendant testified that he and Hindmarch did not get along from the beginning because she would not show him pictures of the evidence against him and she failed to hire an independent toxicologist to test the methamphetamine that was found in his pocket. However, Defendant conceded that independent test results "probably" would have been the same as the State's test results. Defendant further testified that Hindmarch told him she "didn't have to freakin do anything," and that she "didn't give a s——." State had offered Defendant a plea bargain that would have capped his sentence at five years' incarceration. While Hindmarch testified she urged Defendant to accept the plea agreement, Defendant would not do so. He testified he told the judge at a settlement conference that he would sign the plea agreement if he got "four-and-a-half years and a halfway house," and acknowledged that only the State, not Hindmarch, could change the terms of the offer.[4]

¶ 17 Hindmarch testified she gave Defendant "everything [she] had" regarding his case, and she hired a criminalist to analyze the State's lab notes and report, copies of which she offered to Defendant but he refused.[5] Defendant also refused to listen to the tape of Hindmarch's interview with the State's criminalist and declined her notes of the interview. Hindmarch also testified that she encouraged Defendant to accept the plea offer because it was in his best interest to do so, but Defendant refused to discuss the plea offer with her. Hindmarch further testified that she was not hostile toward Defendant and had no problems visiting and speaking with him; however, Defendant did not want to communicate with her about trial strategy and instead wanted to dictate how she should do her job. Indeed, on two occasions Defendant abruptly left meetings with Hindmarch while they were discussing "legal issues" a few days before trial, and he would not provide Hindmarch with an explanation regarding the methamphetamine police discovered in his pocket. Finally, Hindmarch testified she never used the word "freakin" and she told Defendant she "didn't give a s——." only when he threatened to tell the judge that Hindmarch was not doing her job.

¶ 18 In reaching our conclusion that the trial court did not err by denying Defendant's motion, we conclude that Defendant himself was the primary cause of any damage to the relationship between himself and his counsel. We agree with the line of cases from other jurisdictions that deny relief when the fracture is the result of defendant's conduct. *See People v. Barnett,* 17 Cal.4th 1044, 74 Cal.Rptr.2d 121, 954 P.2d 384, 410 (1998) (no irreconcilable conflict if defendant has not made a sustained, good faith effort to work out disagreements or given fair opportunity for counsel to demonstrate trustworthiness); *State v. Bogard,* 173 W.Va. 118, 312 S.E.2d 782, 784 (1984) (defendant cannot invite error by refusing to cooperate with counsel); *State v. Rubio,* 746 S.W.2d 732, 736 (Tenn.Crim.App.1987) (no right to change of counsel when defendant willfully refuses to cooperate with counsel). When, as in this case, a criminal defendant behaves unreasonably in refusing to assist his counsel in preparing for trial or by insisting on unreasonable demands regarding trial tactics, the defendant cannot compel a change of counsel by then arguing that his relationship with counsel is fractured.

## CONCLUSION

¶ 19 The trial court's denial of Defendant's motion to dismiss counsel is affirmed.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and SHELDON H. WEISBERG, Judge.

---

4. The trial court sentenced Defendant to concurrent terms of ten years' imprisonment for Count 1 and three-and-three-quarters years' imprisonment for Count 2.

5. The criminalist discovered nothing unusual.