NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JOHNNY PORTILLO, *Appellant.*

No. 1 CA-CR 16-0057
FILED 11-29-2016

---

Appeal from the Superior Court in Maricopa County
No.  CR 2014-001256-001
The Honorable Alfred M. Fenzel, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B.N. Garcia
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

D O W N I E, Judge:

¶1          Johnny Portillo appeals his criminal convictions and sentences, challenging the superior court's denial of his motion for new appointed counsel.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          Portillo was indicted on one count of armed robbery, two counts of aggravated assault, and one count of first degree murder stemming from a pawn shop robbery that resulted in the death of one of the robbery suspects.  According to Portillo, "[o]ne of the first things the State disclosed to the defense" was a surveillance video that showed the suspects entering the pawn shop.  After a new prosecutor took over the case and viewed the surveillance video in "slow motion," he saw that it also depicted the robbery suspects exiting Portillo's vehicle.  The prosecutor advised defense counsel of his discovery.

¶3          On the date set for trial, Portillo filed a *pro se* "Motion for a Change of Counsel," outlining several complaints about his court-appointed counsel and stating:

> I have recently just lost whatever little confidence I've had with them about important evidence that was shown to me recently that has changed everything.  And to know that my attorneys have just been sitting on important information without disclosing it to me has left me feeling shattered and vulnerable.  I've lost all confidence in them.  If the information was shown to me when it was released I strongly believe I could've made better decisions.  [It is] hard to believe what they are telling me now.  I'm [facing] a life sentence and I do not trust my attorneys I believe this latest incident and differences is irreconcilable as well as proves ineffective assistance of counsel.

¶4            The superior court considered Portillo's motion at two
separate hearings.  During the first hearing, Portillo reiterated his lack of
trust in his lawyers and asserted that, had he known the contents of the
surveillance video earlier, he could have made "better decisions."  The
defense lawyers took no position on Portillo's motion but stated they were
"prepared to go forward."  The court denied Portillo's motion, finding no
evidence that the attorney-client relationship was "irretrievably broken"
or that an "irreconcilable conflict" existed between Portillo and his
counsel.  The court transferred the case to a different judge for trial.

¶5            Several days later, the newly assigned trial judge permitted
Portillo to re-urge his motion for a change in counsel.  Portillo initially
refused to disclose the "new evidence" he claimed had altered his "whole
defense strategy."  The court followed up with the prosecutor, who
responded:

> Your Honor, I don't know what the new evidence would be.
> My guess would be is that it would be the revelation that on
> the surveillance video from one of the neighboring
> businesses, we can discern that the armed robbers actually
> came out of the defendant's vehicle.

Portillo then argued his attorneys had "pretty much been sitting on" the
surveillance video for "over a year" and that the video "changes
everything."  The court again denied Portillo's motion, but permitted him
to review the surveillance video in slow motion while in the courtroom.

¶6            After a jury trial, where the video was received in evidence,
Portillo was convicted of the charged offenses.  He timely appealed.  We
have jurisdiction pursuant to Article 6, Section 9, of the Arizona
Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21,
13-4031, and -4033.

## DISCUSSION

¶7            We review the denial of a motion for new court-appointed
counsel for an abuse of discretion.  *State v. Hernandez*, 232 Ariz. 313, 318,
¶ 11 (2013).  A court abuses its discretion if it commits an error of law or if
the record lacks substantial support for its decision.  *State v. Cowles*, 207
Ariz. 8, 9, ¶ 3 (App. 2004).

¶8            Although the Sixth Amendment guarantees criminal
defendants the right to counsel, "an indigent defendant is not entitled to
counsel of choice, or to a meaningful relationship with his or her

attorney." *Hernandez*, 232 Ariz. at 318, ¶ 12. In evaluating a request for new counsel, trial courts assess:

> Whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel.

*State v. Torres*, 208 Ariz. 340, 344, ¶ 15 (2004).

**¶9** Portillo contends that during the first hearing on his motion, the court improperly focused on the quality of his current counsel.[1] *Torres* states:

> [I]n most cases, the "quality of counsel" factor will not be a consideration when a defendant requests substitution of counsel . . . [because] this factor generally relates more to a claim of ineffective assistance of counsel, which we have since concluded must be raised in a Rule 32 proceeding.

208 Ariz. at 344, ¶ 15. *Torres*, however, "does not preclude the trial court from considering facts related to effective assistance of counsel in determining whether the relationship was completely fractured." *State v. Peralta*, 221 Ariz. 359, 362, ¶ 12 (App. 2009). Moreover, the record does not support the assertion that the court gave undue weight to the quality of current counsel. In ruling on Portillo's motion, the court recited the proper test: whether Portillo had shown that the existing attorney-client relationship was irretrievably broken or that an irreconcilable conflict existed.

**¶10** Portillo also contends the court impermissibly focused on the question of prejudice during the second hearing. But Portillo himself raised that issue, arguing the surveillance video "completely changed" his "whole defense strategy." The superior court simply followed up on Portillo's claims of prejudice with several questions. Moreover, the fact that prejudice is an element of an ineffective assistance of counsel claim, *see State v. LaGrand*, 152 Ariz. 483, 485 (1987), does not mean trial courts

---

[1] One of Portillo's court-appointed lawyers had represented him since his March 2014 arraignment, and her co-counsel, also appointed by the court, had been working on the case for approximately six months.

are precluded from considering whether a defendant has been or will be prejudiced by the existing attorney-client relationship.

¶11            Finally, the superior court did not abuse its discretion by concluding Portillo had not demonstrated an irreconcilable conflict mandating appointment of new counsel. *See State v. Henry*, 189 Ariz. 542, 547 (1997) ("Unlike other factors, the presence of a genuine irreconcilable conflict *requires* the appointment of new counsel."); *State v. Paris-Sheldon*, 214 Ariz. 500, 505, ¶ 12 (App. 2007) (defendant bears burden of establishing severe and pervasive conflict with counsel). An irreconcilable conflict or completely fractured relationship can be established by evidence of a "severe and pervasive conflict" between defendant and counsel or "minimal contact" between lawyer and client, rendering "meaningful communication" impossible. *Hernandez*, 232 Ariz. at 318, ¶ 15. Disagreements over trial strategy, personality conflicts, or a general loss of confidence or trust in counsel, though, do not require appointment of new counsel. *Id.*; *see also Paris-Sheldon*, 214 Ariz. at 505, ¶ 14.

¶12            Portillo repeatedly argued his attorneys' failure to watch the surveillance video frame-by-frame and share its contents with him caused him to lose trust in them and to question their preparedness for trial. These claims, though, do not establish an irreconcilable conflict. *See, e.g., State v. Moody*, 192 Ariz. 505, 507–08, ¶¶ 13, 16 (1998) (irreconcilable conflict existed between defendant and attorney who were "almost at blows" and "antagonistic towards each other"). When the court asked Portillo whether he was claiming he could not "even talk to [counsel] or share your concerns with them," Portillo responded that he was "not going to trust whatever . . . they're going to tell me." He did not assert that meaningful communication with counsel had become impossible.

¶13            The superior court did not abuse its discretion by denying Portillo's motion to change court-appointed counsel.

**CONCLUSION**

¶14        For the foregoing reasons, we affirm Portillo's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA