IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

AMANDA CAMPION AND JAMES CAMPION, AS CO-GUARDIANS OF
ELI MENTZER, A MINOR,
*Plaintiffs/Appellants,*

*v.*

CITY OF TUCSON, A BODY POLITIC,
*Defendant/Appellee.*

No. 2 CA-CV 2022-0046
Filed September 11, 2023

———————————————

Appeal from the Superior Court in Pima County
No. C20184459
The Honorable Kellie Johnson, Judge

**AFFIRMED**

———————————————

COUNSEL

McNamara Law Firm PLLC, Tucson
By Michael F. McNamara and Claire E. McNamara
*Counsel for Plaintiffs/Appellants*

Udall Law Firm LLP, Tucson
By Cassandra Meynard and Jeanna M. W. Chandler
*Counsel for Defendant/Appellee*

Kristin K. Mayes, Arizona Attorney General
By Dwayne E. Ross, Christopher B. Davis, Lindsay M. Hughes, and
Rebecca A. Banes, Assistant Attorneys General, Phoenix
*Counsel for Amicus Curiae State of Arizona*

_____

**OPINION**

_____

Presiding Judge Eppich authored the opinion of the Court, in which Chief Judge Vásquez and Judge Gard concurred.

_____

E P P I C H, Presiding Judge:

**¶1**   Plaintiffs Amanda and James Campion ("the Campions") appeal from a final judgment in favor of defendant the City of Tucson ("the City") after a jury determined the City was immune under A.R.S. § 12-820.03 from the Campions' wrongful death claim.  For the reasons stated below, we affirm.

**Factual and Procedural Background**

**¶2**   In 2017, Anna Mentzer and her son, Ethan, were struck and killed by a car while using a crosswalk in the City of Tucson.  In 2018, the Campions, as guardians and conservators of Eli, Anna's surviving son, filed suit against the City for the wrongful death of Anna under A.R.S. § 12-611. The Campions alleged the City had acted negligently when, in 2002, it replaced a monitored school crosswalk with an unmanned pedestrian crosswalk at the incident location and maintained it as such thereafter. They claimed the City failed to perform a traffic study before the replacement, and the resulting change created an unreasonably dangerous condition that caused Anna's death.

**¶3**   The City moved for summary judgment, claiming immunity under § 12-820.03, and the Campions filed a countermotion, arguing immunity did not apply.  The trial court denied both motions and, after additional briefing, ordered that the issue of immunity would be tried separately from the issues of liability and damages.  At the trial on immunity, the jury determined the City was immune from the Campions' claims, and the court entered a final judgment in favor of the City.  The Campions moved for new trial under Rule 59, Ariz. R. Civ. P., alleging numerous errors.  The court denied the motion, and this appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1), 12-2102(B).

## I. Denial of Summary Judgment

¶4        The Campions argue the trial court improperly denied their motion for partial summary judgment on the issue of whether the City was entitled to a trial on its affirmative defense under § 12-820.03(A). The City contends the ruling is not appealable. We agree.

¶5        On appeal, the Campions argue that the trial court erred by misapplying § 12-820.03(A), which provides immunity to a public entity for injuries "arising out of a plan or design for construction or maintenance of or improvement to transportation facilities." The statute requires the proponent of the defense to prove, in part, that the "plan or design is prepared in conformance with generally accepted engineering or design standards in effect at the time." § 12-820.03(A). The Campions argue the standards with which the City claimed the crosswalk design complied are not "generally accepted engineering or design standards" as a matter of law. *Id.*

¶6        A denial of a motion for summary judgment is generally not reviewable on appeal from a final judgment unless it is based on a purely legal issue or the issue is preserved by moving for judgment as a matter of law under Rule 50, Ariz. R. Civ. P., or by making some other post-trial motion. *Ryan v. Napier*, 245 Ariz. 54, ¶ 14 (2018); *John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, ¶ 19 (App. 2004); *see also Sorensen v. Farmers Ins. Co. of Ariz.*, 191 Ariz. 464, 465 (App. 1997) (denial of summary judgment is an intermediate order only deciding case should go to trial). A purely legal issue is one which does not require determination of any predicate facts. *John C. Lincoln*, 208 Ariz. 532, n.5.

¶7        In this case, the City presented an expert's declaration that the Manual on Uniform Traffic Control Devices (MUTCD), which is published by the Federal Highway Administration, provides "Standards, Guidelines, Options and Support materials for the design and application . . . of traffic control devices." The declaration further stated that "[t]he design for the [subject crosswalk] . . . , including traffic signs and pavement markings, met or exceeded the traffic engineering and MUTCD Standards in effect at the time." The Campions countered by presenting expert opinions that the subject crosswalk violated not only the MUTCD, but other City policies as well.

¶8        As such, the facts regarding which engineering and design standards applied and whether the subject crosswalk conformed to those standards were disputed, and the court's denial of the partial motion for

summary judgment reflected that factual dispute. It follows that the ruling was not based on a purely legal issue. *See John C. Lincoln*, 208 Ariz. 532, ¶ 19 (issue not purely legal where denial of summary judgment is based on existence of material factual disputes); *Sorensen*, 191 Ariz. at 466 (summary judgment denial not reviewable where issue before court involved mixed question of law and fact).

**¶9** The Campions raised the immunity issue again in their Rule 59 motion for a new trial—and again on appeal—but they only argue that the trial court erred by denying their pretrial motion for summary judgment and that the § 12-820.03 defense should never have proceeded to trial. While our decision in *John C. Lincoln* implies an issue may be preserved by a post-trial motion other than a Rule 50 motion for judgment as a matter of law,[1] we find no authority suggesting a motion for new trial preserves the issue of whether the court improperly denied a pretrial motion for summary judgment. 208 Ariz. 532, ¶ 19. Therefore, we decline to review the issue.

## II. Bifurcated Trial

**¶10** The Campions argue that the trial court improperly held a trial solely on the § 12-820.03 affirmative defense, before and separate from a trial on liability and damages. They contend the language of § 12-820.03(B) requires a trial on both the affirmative defense and liability together with a separate bifurcated trial on damages only. In the alternative, they argue the court abused its discretion under Rule 42, Ariz. R. Civ. P., by bifurcating the trial.

**¶11** At the outset, the Campions have not adequately shown that they were prejudiced by the bifurcated proceeding. *See Creach v. Angulo*, 189 Ariz. 212, 214 (1997) (error must be prejudicial to substantial rights of party to warrant reversal); *Joshua J. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 417, ¶ 22 (App. 2012) ("We will not reverse for a procedural error absent a showing of prejudice."). The Campions state that the bifurcated trial "limit[ed] their access to a jury trial and presentation of their case" and "forced [them] to only present evidence as the court deemed relevant to the

---

[1]*John C. Lincoln* cites *Richards v. City of Topeka*, 173 F.3d 1247 (10th Cir. 1999) for this proposition. 208 Ariz. 532, ¶ 19. *Richards* only states that the "proper method for redress of a [trial] court's denial of summary judgment based on factual issues is the filing of motions for judgment as a matter of law during and after trial." 173 F.3d at 1252.

affirmative defense." However, the Campions have not cited any legal authority to support their assertion that their access to a jury trial was improperly limited by bifurcation. And the Campions have not shown prejudice by bifurcation, given their prejudice arguments are based on unrelated evidentiary rulings. *See Creach*, 189 Ariz. at 214.

¶12 Turning to whether the trial court properly bifurcated the trial under § 12-820.03(B), we review issues of statutory interpretation de novo, *Molera v. Reagan*, 245 Ariz. 291, ¶ 8 (2018), and a decision to bifurcate for an abuse of discretion, *Romero v. Sw. Ambulance*, 211 Ariz. 200, ¶ 5 (App. 2005).

¶13 The goal of statutory interpretation is to "effectuate legislative intent." *Ariz. Chapter of the Associated Gen. Contractors v. City of Phoenix*, 247 Ariz. 45, ¶ 7 (2019). In doing so, we first look to the statute's plain language, giving the words their ordinary meaning. *Secure Ventures, LLC v. Gerlach*, 249 Ariz. 97, ¶ 5 (App. 2020). If there is only one reasonable interpretation, we apply that interpretation, but if the language is ambiguous, we consider such factors as "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Glazer v. State*, 237 Ariz. 160, ¶ 12 (2015) (quoting *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991)).

¶14 Section 12-820.03(B) provides that "[i]f a genuine issue of material fact exists as to whether the public entity or public employee has met the requirements of subsection A of this section, the issue shall be resolved by a trial before and separate and apart from a trial on damages." The Campions argue that because the statute only mentions "trial on damages," the legislature has directed the issue of damages, but not liability, be bifurcated. However, their argument is premised on a reading of the statute which would require the issue of liability to be tried at the same time as the affirmative defense. The statute's plain language does not mandate that result.

¶15 The statute is silent as to when the issue of liability is to be tried. The only language limiting the scope of the issues to be adjudicated in either trial is that the enumerated issues—immunity and damages—are to be adjudicated in separate trials. *See id.*; *see also City of Tempe v. Fleming*, 168 Ariz. 454, 457 (App. 1991) (court will not read into statute something not within manifest intent of legislature as indicated by statute itself); *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965) (court will not "inflate, expand, stretch or extend" statute to matters not within expressed provisions). Therefore, bifurcating the trial so that the affirmative defense

is tried first, with liability and damages tried later if necessary, does not run afoul of § 12-820.03(B).

**¶16**        The Campions also argue that the trial court abused its discretion under Rule 42(b) by bifurcating only the issue of immunity. "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Ariz. R. Civ. P. 42(b). The trial court has broad discretion in exercising its severance power. *Cota v. Harley Davidson*, 141 Ariz. 7, 11 (App. 1984); *see also Morales v. Coffey*, No. 1 CA-SA 23-0040, ¶¶ 15-20, 2023 WL 5122710 (Ariz. App. Aug. 10, 2023) (recognizing "broader framework" of Rule 42 as compared to bifurcation requirement of § 12-820.03(B)). As the City argued to the trial court, whether the crosswalk design was "in conformance with generally accepted engineering or design standards in effect at the time," § 12-820.03(A), is similar but distinct from whether the City breached its duty of care in regard to the Campions' negligence claim, and trying the issues together could confuse jurors. Furthermore, adjudicating the affirmative defense as a preliminary matter promoted judicial economy by potentially avoiding the need to go to trial on the negligence theory at all. Although the Campions claim that the evidence relevant to both liability and the affirmative defense overlapped, there was sufficient justification for the bifurcation. Accordingly, the Campions have not shown the court abused its discretion in holding a bifurcated trial.

**¶17**        The Campions further claim that the trial court erred by not requiring the City to prove at the affirmative-defense trial that the injury had arisen out of the plan or design for the subject crosswalk. *See* § 12-820.03(A); *Glazer*, 237 Ariz. 160, ¶ 13 (requirement to prove "injury alleged arose out of a plan or design"). However, they have not shown where this argument was raised or ruled on in the record below, and raise it only in the context of the propriety of bifurcation.[2] *See* Ariz. R. Civ. App. P. 13(a)(7)(B); *see also Ramos v. Nichols*, 252 Ariz. 519, ¶ 8 (App. 2022) (issues may be waived for noncompliance with rules of appellate procedure). More importantly, they do not contend that such proof was lacking — indeed, the entire crux of their argument is that the court improperly precluded the Campions *themselves* from presenting such evidence, thus

---

[2]After oral argument in this court, the Campions unsuccessfully sought to offer specific citations in support of this argument, and to broaden it, in a motion to supplement and supporting reply.

conceding the issue. *See Glazer*, 237 Ariz. 160, ¶ 16 (considering crux of negligence claim in concluding injuries arose out of construction design).[3]

## III. Discovery

**¶18** The Campions next argue that the trial court erred by relieving the City from a prior order that had required it to disclose statistics on similar pedestrian and auto collisions and denying the Campions' related motion for a revised order on the same discovery. They further claim the court erred in denying their motion for an order to show cause and for sanctions for the City's nondisclosure of accident history at a nearby intersection. We review a court's rulings on discovery issues for abuse of discretion. *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, ¶ 12 (2000).

**¶19** Before trial, the Campions moved the trial court to compel the City to disclose "police reports and claims on substantially similar cases." The court, relying on Rule 26(b)(1), Ariz. R. Civ. P., ordered the City to disclose certain information regarding "substantially relatable claims . . . involving pedestrians and motor vehicle collisions . . . from January 2002, through present" but only along a limited section of Pima Street. The City disclosed some information, but the Campions filed a motion for sanctions alleging the City had violated the court's order by failing to disclose or redacting certain information.

**¶20** The Campions later renewed their discovery motion, again requesting the trial court order that the City disclose "substantially similar accidents and claims." The court granted the renewed motion in part, ordering the City to disclose statistics only on pedestrian and automobile collisions from 2002 to 2017 at unsignalized intersections or crosswalks that met specific criteria similar to the crosswalk at issue. The Campions then moved for a revised order, requesting the court to clarify the scope of the City's disclosure obligations regarding similar accidents or claims. The City objected and simultaneously moved for relief from the order, arguing that compliance would be overly burdensome and disproportionate to the needs of the case. After a hearing, the court granted the City's motion for

---

[3]It appears that, in denying summary judgment on the immunity defense, the trial court implicitly found no genuine issue of fact as to whether the injury arose out of a plan or design, finding factual issues only as to the other elements of the defense.

relief and denied the Campions' motion for a revised order. The court also denied the Campions' motion for an order to show cause and for sanctions.

**¶21**      Trial courts have broad discretion in ruling on disclosure and discovery matters. *Marquez v. Ortega*, 231 Ariz. 437, ¶ 14 (App. 2013). This discretion "includes the right to decide controverted factual issues, to draw inferences where conflicting inferences are possible and to weigh competing interests." *Brown v. Superior Court*, 137 Ariz. 327, 332 (1983). Rule 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The Campions first argue that the trial court improperly disregarded the relevance to their claims of accidents at other similar crosswalks. We agree with the Campions that evidence of substantially similar incidents may be relevant to whether the City should have foreseen any danger posed by the crosswalk at issue in regard to the Campions' negligence theory. *See Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 449-50 (1982); *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, ¶ 9 (2018) (foreseeability used to determine breach of standard of care). We also acknowledge that the disclosure sought bears relevance to whether the crosswalk presented an "unreasonably dangerous hazard[]" under the § 12-820.03(A) affirmative defense. *See Glazer*, 237 Ariz. 160, ¶ 32. However, relevance is not the only consideration under Rule 26(b)(1). Relevant discovery must also be proportional to the needs of the case. Ariz. R. Civ. P. 26(b)(1).

**¶22**      Although the trial court did not expressly provide its reasoning behind granting the motion for relief, it appears it implicitly did so by properly considering the proportionality factors set forth in Rule 26(b)(1). In support of its motion for relief, the City presented an affidavit of one of its traffic engineers that stated identifying the intersections and crosswalks meeting the criteria under the order "would take weeks or more to accomplish and would require resources that the City Department of

Transportation and Mobility does not have." It appears the court's ruling turned on this point, noting that it had previously expanded its order largely based on the Campions' having represented that compliance with the order would be easy for the City. And now that the City had given reasons why compliance would be difficult, the court noted it was inclined to grant relief. On appeal, the Campions generally challenge the affidavit and reargue the evidence regarding the City's claim that compliance with the order would have been "overly burdensome." However, we decline to reweigh conflicting evidence on appeal. *See Clark v. Kreamer*, 243 Ariz. 272, ¶ 14 (App. 2017).

**¶23**        The evidence in the record supports a finding that the burden on the City of producing the information sought outweighed its likely benefit, and the trial court therefore did not abuse its discretion in granting the City's motion for relief from the order. *See* Ariz. R. Civ. P. 26(b)(1); *Tilley v. Delci*, 220 Ariz. 233, ¶ 16 (App. 2009) ("'Abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.").[4]

**¶24**        The Campions also claim the trial court erroneously denied their renewed motion to show cause and for sanctions, but fail to develop a meaningful argument on the issue. Because we are unable to determine the legal grounds upon which they challenge the ruling, we decline to address it. *See In re J.U.*, 241 Ariz. 156, ¶ 18 (App. 2016) ("We generally decline to address issues that are not argued adequately, with appropriate citation to supporting authority.").

**¶25**        The Campions further allege numerous "discovery violations," and generally claim that "[t]he Court's rulings improperly abided and rewarded the City's years-long effort to avoid its discovery obligations." They argue that Rule 26.1, Ariz. R. Civ. P., imposed on the City a duty to disclose relevant information at the outset, but it had "disclosed no documents regarding similar accidents," even after specific discovery requests. Yet, the Campions do not cite any orders they challenge related to these alleged violations, and we decline to review them. *Id.*; Ariz.

---

[4]It necessarily follows that the court also did not abuse its discretion in denying the Campions' motion for a revised order on the same disclosure. The Campions' motion for a revised order references a "proposed amended form of Order." However, they did not cite to the proposed order in the record on appeal in their briefs, and we have denied their post-oral argument request to supplement the record with a copy.

R. Civ. App. P. 13(a)(7)(B) (each contention must include "references to the record on appeal where the particular issue was raised and ruled on"). To the extent they raise these complaints in relation to the orders they have unsuccessfully identified as error, we conclude they are not relevant considerations. *See* Ariz. R. Civ. P. 26(b)(1).

## IV. Evidentiary Rulings

¶26 The Campions also claim the trial court made numerous erroneous evidentiary rulings, excluding evidence as irrelevant to the affirmative defense. We review evidentiary rulings for an "abuse of discretion" and "will not reverse unless unfair prejudice resulted or the court incorrectly applied the law." *Larsen v. Decker*, 196 Ariz. 239, ¶ 6 (App. 2000) (citation omitted). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Ariz. R. Evid. 401.

### A. Policy 7.44

¶27 The Campions claim the trial court erroneously excluded City of Tucson Department of Transportation Policy 7.44 ("Policy 7.44"), adopted in 2014, which provided "guidance for the removal of pedestrian crosswalk pavement marking and signage." The minute entry reflects that the court precluded mention of the policy because it was "not relevant to any prong of the immunity trial." The Campions contend that it was relevant to show that the crosswalk was dangerous and to impeach the City's design expert.

¶28 Policy 7.44 provides that an engineering study is to be performed before installing new marked crosswalks at unsignalized locations and also when considering removal of an existing crosswalk. It states that crosswalks that are noncompliant with the standards it sets forth "will be removed at such time in which the roadway surface is scheduled to be removed and replaced." The policy notes that many of the City's crosswalks "were striped without the benefit of an engineering study," admitting that "[s]tudies have shown . . . in certain situations, pedestrian-related crashes increase with the presence of a marked crosswalk."

¶29 We disagree with the Campions that the policy is evidence that the particular crosswalk at issue here posed an "unreasonably dangerous hazard[]" under § 12-820.03(A). Although Policy 7.44 generally states that there are circumstances that may increase the risk of crosswalk

accidents, it makes no specific findings or acknowledgments of dangerousness regarding the City's existing crosswalks. Furthermore, the Campions were not prejudiced by exclusion of the policy as the jury heard about the study underlying the policy itself (the "Zegeer study"), as well as expert testimony that, based on the study, the specific crosswalk at issue posed an increased safety risk.

¶30　　　We are also not persuaded by the Campions' argument that the alleged error was compounded when the trial court allowed the City to "insinuat[e] a Policy 7.44 approach to the problem was acceptable without fair cross-examination that the approach was premised on the Zegeer standard." In cross examining one of the City's witnesses, the Campions asked whether the City of Phoenix removed any crosswalks as a result of the Zegeer study, to which the witness responded that it did "[d]uring resurfacing projects." On redirect, the witness agreed that Tucson has a similar practice of "remov[ing] non-candidate locations consistent with resurfacing." Counsel for the Campions objected, claiming the City "brought up [P]olicy 7.44 as a defense." The court overruled the objection.

¶31　　　Based on this record, we disagree that the City "insinuat[ed]" the removal practice was an "acceptable" approach or brought it up as a defense. Rather, the City's questioning was in response to the statement the Campions elicited during cross examination, and the actual policy was never mentioned. Moreover, Policy 7.44 was adopted more than a decade after the school crosswalk had been replaced by the pedestrian crosswalk at issue, and thus had no bearing on the design standard that then existed. The policy therefore remained irrelevant to the issues at trial, and the Campions have shown no abuse of discretion in its exclusion.[5] *See Larsen*, 196 Ariz. 239, ¶ 6.

## B. Other Accidents

¶32　　　The Campions next claim the trial court erred by excluding evidence of accidents at the nearby "Pima/Rook" crosswalk. In excluding

---

[5]The Campions also argue that "[e]vidence of a defendant's own policies and procedure [is] admissible as bearing on the standard of care." However, the "standard of care" is a negligence issue, and the court's order limited its exclusion of Policy 7.44 to the first phase of trial on the § 12-820.03 immunity defense. *Napier*, 245 Ariz. 54, ¶ 17 ("To recover on a negligence claim, a plaintiff must prove a duty requiring the defendant to conform to a standard of care . . . .").

the evidence, the court found that the Campions had not properly disclosed the accidents as a basis for their expert's opinion that the crosswalk at issue was unreasonably dangerous. The court also found that the accidents were not otherwise admissible because they were not substantially similar to the accident at issue.

¶33 The Campions first contend that they properly disclosed the Pima/Rook accidents, contrary to the trial court's finding. Rule 26.1(d)(4) requires that expert witnesses provide a report containing "a complete statement of all opinions the expert will express and the basis and reasons for them" as well as "the facts or data considered by the expert in forming them." If a party fails to disclose information Rule 26.1 requires to be disclosed, that party "may not use the information . . . as evidence at trial." Ariz. R. Civ. P. 37(c)(1). The Campions point to several items in the record as evidence they complied with the disclosure requirements, none of which constitute a signed written report by their expert stating he considered the Pima/Rook accidents or that the accidents provided a basis for his opinions. *See* Ariz. R. Civ. P. 26.1(d)(4). Therefore, the court's ruling was not error on this ground.

¶34 The Campions next contend that the Pima/Rook accidents should have otherwise been admissible because they were "substantially similar with respect to the defect at issue." While our supreme court has stated that "[e]vidence of previous accidents tends to prove the existence of a dangerous condition," it must still be shown "that the previous conditions were substantially similar to the conditions resulting in the accident at issue." *Burgbacher v. Mellor*, 112 Ariz. 481, 483 (1975); *see also Slow Dev. Co. v. Coulter*, 88 Ariz. 122, 125 (1960) ("[E]vidence of other similar accidents at or near the place suffered by persons other than the plaintiff, at different times, not too remote in point of time, is admissible.").

¶35 As an offer of proof that the Pima/Rook accidents were substantially similar, the Campions provided the trial court with a letter from their expert stating such. In the letter, the expert compared the crosswalks using commonly used traffic engineering criteria and concluded that the Pima/Rook crosswalk and the subject crosswalk "are substantially similar as pedestrian crossings" and that "[t]he risk of these intersections is substantially similar." However, despite noting the specific circumstances under which the Pima/Rook accidents had occurred, it does not compare them to the circumstances of the accident at issue. In precluding evidence of the Pima/Rook accidents, the court found that the Pima/Rook area "is quite different than the area involved in our collision" and that there was

"no similarity that would make these incidents relevant to the issue before this jury." The court listed several specific differences at the Pima/Rook crosswalk, including the fact that there are businesses and an apartment complex there. The court also noted differences in the circumstances of the other accidents, including the time and manner in which they had occurred.

¶36         We agree with the Campions that "it is not necessary that it be shown that such accidents occurred under circumstances precisely the same as those surrounding the accident in question" and that "it is sufficient that they are similar in their general character." *Slow Dev. Co.*, 88 Ariz. at 126. However, we find nothing in the record suggesting the trial court applied the incorrect standard. We also cannot conclude that the court's ruling is unsupported by the record. The Campions' lack of citation to relevant portions of the record on appeal prevent us from assessing the appropriateness of those findings, specifically with respect to the circumstances of the accident that is the subject of the suit. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 343 (App. 1984) ("We are not required to assume the duties of an advocate and search voluminous records and exhibits to substantiate an appellant's claims."). Even if a different court might have reached the opposite conclusion, we cannot find an abuse of discretion unless "the lower court exceeded the bounds of reason by performing the challenged act." *Toy v. Katz*, 192 Ariz. 73, 83 (App. 1997), *disapproved of on other grounds by Sholem v. Gass*, 248 Ariz. 281, ¶ 21 (2020). Therefore, the court did not abuse its discretion in excluding evidence of the Pima/Rook accidents.

¶37         The Campions also argue that "[n]o authority supported the Trial Court's conclusion that an expert's opinion regarding other accidents is a required predicate for their admissibility." However, they do not cite the record to show where the court reached such a conclusion. The court made two distinct rulings: (1) it precluded the Campions from eliciting opinions from their expert "regarding accidents at other intersections as a basis for his opinion in this case"; and (2) it otherwise precluded the evidence as irrelevant. As to the former, the court found that such an opinion had not been disclosed. As to the latter, the court found that the other accidents were not substantially similar. We find no error.

## C. Absence of Accident History

¶38         The Campions next claim that the trial court erred by allowing the City to claim during opening statements that there was no accident history at the subject crosswalk. However, they make no reference to the record on appeal "where the particular issue was raised and ruled on."

Ariz. R. Civ. App. P. 13(a)(7)(B). We are not obligated to search the record to determine if the issue was raised below. *See Gibson v. Boyle*, 139 Ariz. 512, 521 (App. 1983). The issue is therefore waived. *See In re Aubuchon*, 233 Ariz. 62, ¶ 6 (2013) (arguments waived when "not supported by adequate explanation, citations to the record, or authority").

**¶39**    The Campions also claim the trial court erred by refusing to give a corrective jury instruction in light of the City arguing and presenting testimony regarding the lack of accident history at the incident site. We review the court's refusal to give a requested jury instruction for an abuse of discretion. *See Dupray v. JAI Dining Servs. (Phx.), Inc.*, 245 Ariz. 578, ¶ 22 (App. 2018).

**¶40**    During opening statements, counsel for the City told the jury that they had "looked at a database that is held by ADOT, and . . . found that there were no pedestrian or bicyclist crashes within 250 feet of this intersection, including the crosswalk, during the period between 2005 and 2017." Counsel also stated that the Campions had "dug deeper and got records from 2001 of police contacts related to this intersection," and there had been nothing "indicat[ing] a pedestrian motor vehicle crosswalk [accident] from 2001 to 2017." In support of this assertion, an expert for the City testified that state crash records dating to the beginning of 2005 revealed no pedestrian crash records within 250 feet of the subject intersection.

**¶41**    The Campions filed a motion arguing that pursuant to *Jones v. Pak-Mor Manufacturing Co.*, 145 Ariz. 121 (1985), they were entitled to the following jury instruction:

> For a defendant to claim an absence of accident history evidences a lack of an unreasonably dangerous condition, it must prove it has a system to determine if incidents are occurring and being evaluated. In this case, the City of Tucson claims it does not have such a system to identify crosswalks which meet the criteria to be a "Zegeer crosswalk." You are to disregard the statement made in opening statement by the City of Tucson as to the absence of an accident history at the Mountain View and Pima crosswalk.

The trial court denied the motion.

¶42        Because the proposed jury instruction is an incorrect statement of the law, the trial court did not abuse its discretion in refusing to adopt it. *See State v. Cox*, 214 Ariz. 518, ¶ 17 (App. 2007). A court determines the admissibility of no-prior-accident evidence under Rule 403, Ariz. R. Evid. *Pak-Mor Mfg. Co.*, 145 Ariz. at 126-27. Relevant to this analysis is whether the proponent has made a showing "that if there had been prior accidents, the witness probably would have known about them." *Id.* at 127. If no such showing is made, the court "*generally* should refuse the offered evidence," in its discretionary weighing of the probative value of the evidence against the potential for undue prejudice. *Id.* (emphasis added). In the absence of this "evidentiary predicate," the evidence "has very little probative value and carries much danger of prejudice." *Id.* The Campions' requested instruction would improperly remove the court's discretion to determine whether no-prior-accident evidence is admissible in this particular circumstance under Rule 403. *See id.* at 128-29.

¶43        Furthermore, the relevant issue at trial was whether the incident crosswalk presented an "unreasonably dangerous hazard[]." § 12-820.03(A). The City's comment during opening statements and the testimony related thereto was only pertinent to the safety history of the incident crosswalk, and the requested instruction mischaracterizes this evidence by suggesting there must be, more broadly, "a system to identify crosswalks which meet the criteria to be a 'Zegeer crosswalk.'" We therefore conclude the court did not err by refusing to give the Campions' requested instruction.

## D. Exclusion of Video Evidence

¶44        The Campions next claim the trial court erred by excluding a 26-second video taken in 2020 depicting the perspective of a driver approaching and passing through the subject crosswalk. In arguing for its admission, the Campions admitted that the crosswalk signage in the video differed from what it had been at the time of the accident. The court excluded the evidence, reasoning that it was "more problematic and more prejudicial than probative."

¶45        On appeal, the Campions argue that the discrepancy in signage "could be simply explained as such and would not have confused anyone." They also claim that exclusion of the video was "especially prejudicial" because the jury was unable to do a site inspection and photographs of the intersection "failed to capture the experience of a driver in motion, going the speed limit . . . and the impact of the crosswalk's visibility and time for a motorist to react going that speed limit."

¶46 However, the Campions have not established that the trial court abused its discretion by excluding the video. Rule 403 allows the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, the probative value of the video was decidedly low — it was taken years after the accident in question and, by the Campions' own admission, was not an accurate depiction of the crosswalk at the time of the accident. In contrast, the risk of confusing the issues or misleading the jury was substantial in that the video could raise the ancillary issue of why there had been a change after the accident. The court also indicated that, depending on the reasons for the change, the video could constitute evidence of a subsequent remedial measure. Evidence of subsequent remedial measures "that would have made an earlier injury or harm less likely to occur," is not admissible to prove "a defect in a product or its design" or "a need for a warning." Ariz. R. Evid. 407. The record therefore supports the court's exclusion of the video under Rule 403.

### E. Exclusion of Federal Highway Administration (FHWA) Report

¶47 The Campions also claim that the trial court erred by excluding an FHWA-sponsored report from 2000. On direct examination, one of the Campions' expert witnesses was presented with the FHWA report and testified that he "didn't rely on [it]" and that the document "was not one of the ones [he] referenced" in formulating his opinions. The Campions then moved to have the report admitted, and the City objected arguing that "[t]he expert did not rely on it." The court sustained the objection.

¶48 The Campions argue the FHWA report is admissible under Rule 703, Ariz. R. Evid. However, in discussing Rule 703, our supreme court has instructed that on direct examination, an expert witness "may disclose facts or data that have not been admitted in evidence — and that may not be admissible — if they form a basis for his opinion." *State v. Lundstrom*, 161 Ariz. 141, 145 (1989). Here, the Campions' expert explicitly stated he did not rely on the FHWA report in formulating his opinion.[6] We

---

[6]The expert at one point stated, "It does have some information in both treatments I have seen in other places, but I used this document." However, based on the context of the statement, we cannot conclude he was asserting the FHWA report formed a basis for his opinion in this case,

therefore conclude that Rule 703 does not provide a basis for the expert to have even disclosed the contents of the report through testimony, let alone for admission of the report into evidence, and the trial court did not abuse its discretion.[7]

**¶49**		The Campions also argue that the FHWA report should have been admitted because it was relevant to the trial issue of whether the subject crosswalk was unreasonably dangerous and whether there were adequate warnings. *See* § 12-820.03(A). They also assert the report was "highly relevant impeachment evidence." But, they do not cite to the record to show where these arguments were presented to the trial court such that it had an opportunity to address their merits, and they are therefore waived on appeal. *See In re Aubuchon*, 233 Ariz. 62, ¶ 6; *BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, ¶ 25 (2021) (argument not timely raised below waived on appeal).

### F. Cross Examination of City Expert Witness

**¶50**		The Campions next claim that the trial court improperly precluded them from asking an expert witness for the City about his previous testimony in a different case or the "implications" of that case.[8] It is not clear from the Campions' opening brief exactly what they sought to elicit from the expert, but to the extent they claim they should have been permitted to question him about the court's legal conclusions in the other case, they have cited no authority suggesting that would have been proper. To the extent they sought to elicit something else, their argument is waived having not sufficiently cited to the record or legal authority which would allow us to adequately address it. *See In re Aubuchon*, 233 Ariz. 62, ¶ 6.

---

particularly because he explicitly denied having relied on it immediately before.

[7]We note that the City failed to respond to the Campions' argument regarding the FHWA report, and although we may treat this as a confession of error, we refrain from doing so where there is no error. *See In re $26,980.00 U.S. Currency*, 199 Ariz. 291, ¶ 20 (App. 2000).

[8]On appeal in the other case, *Xiao Ping Chen v. City of Seattle*, 223 P.3d 1230, 1239 (Wash. Ct. App. 2009), which had similar facts to this case, the court rejected the City of Seattle's argument that "it did not breach its duty to maintain the crosswalk in a safe condition because the MUTCD did not require it to install additional safety measures at [a] crosswalk."

¶51        The Campions also argue the trial court erred by allowing the same expert for the City to offer "non-responsive and undisclosed testimony," which they allege violated Rule 26.1(d).  This argument is also waived as they do not identify any specific ruling they challenge.  *See BMO Harris Bank N.A.*, 251 Ariz. 588, ¶ 25.

## V.  "Legal Duty" Jury Instruction

¶52        The Campions claim the trial court erred by refusing to give the jury the following instruction:  "St. Cyril School had no legal duty with respect to the design change, maintenance, and removal (or non-removal) of the subject crosswalk from 2002 to the present.  No fault may be allocated to St. Cyril School in this case."[9]  They argue that the City "repeatedly asserted and had witnesses . . . speak extensively to [the school's] responsibilities regarding the subject crosswalk, . . . insinuating a duty and responsibility," and thus the school effectively became "an unnamed nonparty at fault."  As previously stated, we review the court's refusal to give a requested jury instruction for an abuse of discretion.  *See Dupray*, 245 Ariz. 578, ¶ 22.

¶53        In rejecting the proposed instruction, the trial court reasoned that it was unnecessary given the limited issues before the jury at that particular phase.  We agree.  The only issue to adjudicate at the trial was whether the City was immune from the Campions' claims under the § 12-820.03(A) affirmative defense.  The jury was therefore only tasked with deciding whether the plan or design for the subject crosswalk had been "prepared in conformance with generally accepted engineering or design standards" and whether the City had given the public "a reasonably adequate warning of any unreasonably dangerous hazards." § 12-820.03(A). "Legal duty" and "fault" were not relevant considerations, and inclusion of an instruction referencing these terms posed a risk of misleading the jury. *See State v. Ewer*, 254 Ariz. 326, ¶ 11 (2023) (misleading jury instructions are improper).  Therefore, the court did not abuse its discretion in excluding the Campions' requested instruction.

---

[9]Early in the litigation, the City named St. Cyril School as a nonparty at fault based in part on the fact that the principal had submitted a request to the City in 2002 that the abutting school crossing revert to a pedestrian crossing.  The school was added as a defendant, but was subsequently dismissed from the action for reasons unrelated to this appeal.

## VI. Absolute Immunity for Adopting Policy 7.44

**¶54** The Campions also claim the trial court erred by granting the City's pretrial motion for partial summary judgment and ruling that under A.R.S. § 12-820.01 the City was "entitled to absolute immunity for its decision not to remove the crosswalk when it evaluated the crosswalk under [Policy] 7.44." The Campions request that we reverse this ruling so that it "is not in place if this Court remands and allows the Campions to pursue their negligence claim." Because the final judgment resulted from the jury verdict that the City was entitled to immunity from the Campions' claims under § 12-820.03(A), and because we have not identified errors warranting reversal of that judgment, we need not address whether the City's motion for partial summary judgment under § 12-820.01 was granted in error. *See Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517, n.1 (App. 2013) (issues not affecting disposition need not be resolved).

## VII. Request for Sanctions and Attorney Fees

**¶55** The City requests we sanction the Campions' counsel and award reasonable costs and fees for defending this appeal under Rule 21(a) and Rule 25, Ariz. R. Civ. App. P. Under Rule 25, we may impose attorney fees as a sanction if we determine that the appeal is "frivolous or was filed solely for the purpose of delay," or based on a violation of the Arizona Rules of Civil Appellate Procedure. Although we have identified Rule 13(a)(7) deficiencies in the Campions' brief, particularly with respect to citations to the record, we decline to impose sanctions under Rule 25 in our discretion. *See Villa De Jardines Ass'n v. Flagstar Bank, FSB*, 227 Ariz. 91, ¶ 27 (App. 2011) (Rule 25 sanctions discretionary). However, as the prevailing party, the City is entitled to its costs on appeal upon compliance with Rule 21(b). *See* A.R.S. § 12-342(A).

## Disposition

**¶56** For the foregoing reasons, we affirm.